UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| COREY TAYLOR, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | NO. 1:25-cv-00079 |
| TAUREAN JAMES, Warden, et al., | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

On September 23, 2025, Corey Taylor, a Tennessee inmate incarcerated at the Turney Center Industrial Complex (TCIX), filed a pro se, verified civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1), a motion for leave to proceed in forma pauperis (IFP) (Doc. No. 2), and a motion to file the suit under seal (Doc. No. 3). The Court denied Plaintiff's IFP application without prejudice to renew and denied his motion to file under seal. (Doc. No. 11).

On October 7, 2025, Plaintiff filed a motion for a temporary restraining order (TRO) under Federal Rule of Civil Procedure 65(b). (Doc. No. 7). The Court ordered that the TRO Motion be held in abeyance pending the resolution of the filing fee issue. (Doc. No. 11 at 5–6).

On October 30, 2025, Plaintiff filed two motions: a Motion "for leave to file deposition/affidavit of violent acts done to another as proof of issues" raised in the Complaint (Doc. No. 12) and a Motion in Opposition to the Court's denial of leave to file under seal (Doc. No. 13).

On November 4, 2025, Plaintiff filed a Motion asking the Court to entertain his IFP application (Doc. No. 14) as well as the application itself (Doc. No. 15).

# I. MOTION AND APPLICATION FOR PAUPER STATUS

A prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's affidavit and trust account documentation that he lacks the funds to pay the entire filing fee, his Motion (Doc. No. 14) and IFP application (Doc. No. 15) are **GRANTED** and a $350 filing fee is **ASSESSED**.[1] The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. Id. § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. Id. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order

---

[1] Prisoners bringing civil lawsuits are "required to pay the full amount of a filing fee," 28 U.S.C. § 1915(b)(1), either in a lump sum at the time of filing or in installments over time via an assessment against the prisoner's inmate trust account. Where the prisoner is granted pauper status and allowed to pay in installments, the fee is $350. See 28 U.S.C. § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023).

must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. MOTIONS TO FILE EVIDENCE AND TO RECONSIDER REQUEST TO SEAL

Plaintiff has filed a Motion for leave to file a fellow inmate's notarized statement, declared under penalty of perjury, concerning that inmate's recent violent encounter at TCIX. (Doc. No. 12). However, although styled as "Plaintiff[']s Petition for Leave to File," the Motion is not signed by Plaintiff, but by the inmate declarant, Michael Patton. Mr. Patton is not a party to this case. His signature is not effective for purposes of Federal Rule of Civil Procedure 11(a)'s requirement that "[e]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Even if Mr. Patton's statement was properly before the Court, Plaintiff offers no explanation about how it relates to him or his claims. Normally, "[e]vidence should not be submitted to the court until this action reaches an appropriate stage in litigation for the submission of evidence, such as in response to a motion for summary judgment, at trial, or when specifically requested by the court." Sandoval v. Lopez, No. 1:23-CV-00248-JLT-SKO (PC), 2025 WL 437015, at *1 (E.D. Cal. Feb. 7, 2025). Accordingly, Plaintiff's Motion for leave to file Mr. Patton's declaration (Doc. No. 12) is **DENIED**. The Clerk **SHALL** return Docket No. 12 to Plaintiff and strike it from the docket of this case.

Turning to Plaintiff's Motion for the Court to reconsider its denial of his request to seal this record and his individual filings from public view, the Court declines to reconsider its ruling. Plaintiff's Motion reiterates that he "[feels] he'll be in danger due to the content" of his pleadings in this matter, should they be publicly accessible on Westlaw or another "law website," and asks the Court to at least "not publish this matter on Westlaw or any sites that will be accessible for the view of non-parties, etc." (Doc. No. 3 at 2–3). For the reasons stated in its prior order (Doc. No.

3

11 at 3–5) and incorporated herein, the Court declines to seal this case or limit its distribution on publicly accessible internet sites based on Plaintiff's fear that openness to public view will generate a nonspecific threat to his safety. The Motion to reconsider (Doc. No. 13) is **DENIED**.

### III. TRO MOTION

With the issue of the filing fee now resolved, Plaintiff's TRO Motion (Doc. No. 7) is ripe for ruling. That Motion was filed "pursuant [to] Fed. R. Civ. P. 65(b)" (id. at 1), which governs issuance of "a temporary restraining order without written or oral notice to the adverse party or its attorney." Fed. R. Civ. P. 65(b)(1). A TRO may issue "only if . . . specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required." Id.

#### A. Plaintiff's Filings

As relevant to the TRO Motion, the Complaint claims that understaffing at TCIX has resulted in security threat group (STG) affiliated inmates "control[ling] the offender population" by "liv[ing] as they once lived on the streets." (Doc. No. 1 at 8.) As a result of a particular violent incident in Plaintiff's residential unit, Unit 1B, the unit was placed under an extended, security-related lockdown that forced his confinement to his cell "for 24 hrs a day 7 days a week" (id. at 6) and caused the loss of various important privileges, including the ability to attend religious services (id. at 7) and a medical appointment for treatment of an oral condition. (Id. at 4–6).

In his affidavit in support of the TRO Motion, Plaintiff states that he notified the appropriate officials of his concerns by writing a letter to Warden James inquiring about the Warden's goals for prisoner rehabilitation and for stemming the tide of drug overdoses, gang violence, robberies, and extortions by armed inmates at TCIX. (Doc. No. 8 at 1). He also wrote a

4

letter to TDOC complaining about these conditions of confinement, though he states that TDOC officials regularly defer to the Warden when such matters are grieved. (Id. at 1–2). Plaintiff asserts that, despite being aware of the high levels of prisoner "violence, drugs, stabbings and deaths at TCIX" for years, Defendants "have failed to do anything." (Id. at 2).

As revealed in the TRO Motion itself (Doc. No. 7) and in the proposed order submitted by Plaintiff (Doc. No. 7-2), he primarily seeks emergency injunctive relief from the lockdown conditions in his unit, which had lasted for 26 days as of the time the TRO Motion was composed. During the lockdown, Plaintiff was deprived of tablet privileges (and therefore the ability to conduct online legal research, video visitation with family, and one domestic court hearing via Zoom), all outdoor recreation, the ability to see providers for medical or mental health treatment (including a regular appointment for maintenance of Plaintiff's oral lichen planus condition), hot meals, and the ability to attend Islamic worship services. (Doc. No. 7 at 2–4). His proposed order would abate these conditions by enjoining Defendants to "stop prohibiting communication to loved ones" and to "stop disconnecting offender tablets" in order to prohibit their access to legal, religious, and educational materials during the lockdown. (Doc. No. 7-2 at 1). It would further enjoin Defendants from imposing discipline to individual inmates in accord with TDOC disciplinary policy, and otherwise to provide inmates with adequate healthcare, ventilation, hygiene, and hot meals. (Id. at 2).

The TRO Motion also seeks to enjoin future instances of the TCIX administration corporately punishing an entire unit by locking all unit residents down in their cells in response to the violent conduct of a few individual residents. (See Doc. No. 7 at 11 ("If the court grants this injunction . . . the defendants would be ordered to . . . stop corporate punishment, lockdowns for more than one week without opportunities for physical exercise…."); Doc. No. 7-2 at 2). It further

5

Case 1:25-cv-00079   Document 16   Filed 11/19/25   Page 5 of 14 PageID #: 107

seeks to stop (1) the practice of understaffing TCIX and the related problems of prison staff yielding to the culture of gang violence, which in turn is fueled by the prison drug trade (Doc. No. 7 at 2, 6–7), (2) the Tennessee Board of Parole's practice of failing to hold timely hearings (id. at 4), and (3) the failure of TCIX administration to prioritize rehabilitation of the inmates (id. at 4–6). (See also Doc. No. 7-2).

**B. Legal Standard**

Under Federal Rule 65(b), the purpose of a temporary restraining order is to preserve the relative positions of the parties until the Court can hold an adversarial hearing for a preliminary injunction or trial on the merits. Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981); Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 439 (1974); Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 226 (6th Cir. 1996) (the purpose of injunctive relief "is to preserve the status quo so that a reasoned resolution of a dispute may be had"). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." Stenberg v. Cheker Oil Co., 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." Ciavone v. McKee, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002)).

6

In determining whether to issue a TRO or preliminary injunction, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. E.g., A&W X-Press, Inc. v. FCA US, LLC, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022) (citing Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006)). "These four considerations are 'factors to be balanced, not prerequisites that must be met.'" Id. (quoting Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)).

When evaluating for an alleged constitutional violation, "the likelihood of success on the merits often will be the determinative factor." Thompson v. DeWine, 976 F.3d 610, 615 (6th Cir. 2020) (per curiam), cert. denied, 141 S. Ct. 2512 (2021) (quoting Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012)). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" D.T. v. Sumner Cnty. Schools, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982)). "That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit." Id.

## C. Analysis

Importantly, Plaintiff has now clarified that "on 10-7-2025[,] [he] was let off lockdown which was one of various reasons as to what motivated him to file this suit." (Doc. No. 13 at 3). Accordingly, to the extent that the TRO Motion seeks emergency relief from the conditions that accompanied the recent lockdown of Plaintiff's unit, that portion of the motion is now moot. See

Calipo v. Wolf, No. CV 18-320, 2018 WL 7412835, at *4 (W.D. Pa. Nov. 21, 2018), report and recommendation adopted, 2019 WL 858035 (W.D. Pa. Feb. 22, 2019) ("In light of the fact that the lockdown has ended, any relief sought by Plaintiff in connection with that specific lockdown has been rendered moot."); Levi v. Hogsten, No. 1:CV-07-1839, 2008 WL 11495449, at *3 (M.D. Pa. Sept. 10, 2008), report and recommendation adopted, 2008 WL 11495448 (M.D. Pa. Oct. 21, 2008) (denying as moot inmate's injunction motion related to restrictions accompanying lockdown, including deprivation of "hot meals, one hour recreation per day, showers and sick call, [and] . . . Kosher meals," since that particular lockdown ended and "the lockdown restrictions [were not] likely to occur again").

    1. Irreparable Harm

Plaintiff relies upon irreparable harm during the lockdown conditions that were imposed in the weeks leading up to the filing of the Complaint, which have since been lifted. On the first page of the TRO Motion, Plaintiff alleges that he "suffered injuries and irreparable harm in the days preceding the filing of this action," specifically the loss of First Amendment freedoms. (Doc. No. 7 at 1). On the seventh page, Plaintiff refers to "the irreparable injury [he] ha[s] already suffered," and the additional irreparable injury he will continue to suffer while on lockdown, "due to his oral disease which he was scheduled to get dental treatment on 9/11/25 when the warden cancelled his appointment due to individual acts of others." (Id. at 7). Following the lifting of the lockdown and, presumably, the restoration of Unit 1B residents' ability to leave the unit to attend religious services and dental appointments, it does not appear that Plaintiff makes any showing that he will suffer any irreparable injury in the absence of injunctive relief. This alone is sufficient reason to deny the Motion. See D.T., 942 F.3d at 327 ("If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit.").

8

2. Likelihood of Success on the Merits

Outside of the restrictions that accompanied the recent lockdown, the Complaint seeks relief from TCIX's practice of locking down an entire unit for the violent misbehavior of a few unit residents, asking for a prospective "policy change of the institutional procedures regarding these lockdowns." (Doc. No. 1 at 11). It further requests "[t]hat corrective actions be taken to stop the STG violence and stabbings as well as drug overdose deaths of all State of TN prisoners." (Id.). Correspondingly, Plaintiff's proposed injunctive order would enjoin Defendants to "stop . . . unit/facility lockdowns due to individual acts," to "take protective measures to stop the maintaining of a nuisance and the severely violent gang and drug infested conditions in the offender population," and to "provide adequate rehabilitative services and safe environments." (Doc. No. 7-2 at 1–2).[2]

Plaintiff does not have a substantial likelihood of succeeding on the merits of his claim that TCIX's lockdown practice (with its attendant loss of privileges for the inmates subject to lockdown) is unconstitutional. This is particularly true because the lockdown is a response to deadly violence and its duration was short one month. In Cook v. Campbell, 173 F.3d 854 (Table), 1999 WL 183316 (6th Cir. Mar. 16, 1999), the Sixth Circuit held:

> The plaintiffs' argument that the defendants improperly placed them on lockdown status is without merit. The plaintiffs allege that, after a fight between prison gang members, the entire prison was locked down for a four month period. However, the imposition of lockdown status is not an atypical, significant deprivation from the ordinary circumstances of prison life and prisoners have no liberty interest in remaining free from lockdown. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995).
>
> The plaintiffs also argue that they were improperly restricted in their use of several privileges and rights during the lockdown period. However, lawful incarceration

---

[2] Notably, any order to institute "protective measures" and "adequate rehabilitative services" would employ terms that are too generic and subjective to sustain any viable injunction, whether temporary, preliminary, or permanent. See Union Home Mortg. Corp. v. Cromer, 31 F.4th 356, 362 (6th Cir. 2022) (an injunctive order "must be couched in specific and unambiguous terms" or else be subject to vacatur) (citing, e.g., Fed. R. Civ. P. 65(d)(1)).

9

Case 1:25-cv-00079   Document 16   Filed 11/19/25   Page 9 of 14 PageID #: 111

> results in the necessary withdrawal or limitation of many privileges and rights, and this retraction is justified by prison considerations. *See id.* at 485. While the plaintiffs allege that their ability to use the prison law library was restricted, they have not alleged that this restriction actually hindered their ability to pursue a legal claim, as required for a successful access to the courts claim. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996). Although the plaintiffs also allege that they were not provided with sufficient exercise while on lockdown status, the restriction of exercise during a prison lockdown is appropriate. *See Arce v. Walker*, 139 F.3d 329, 337 (2d Cir. 1998); *Thomas v. Ramos*, 130 F.3d 754, 764-65 (7th Cir. 1997). Further, the defendants properly restricted prison visitation during this time because prison inmates have no constitutional right to visitation. *See Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997), *cert. denied*, 118 S.Ct. 2371 (1998). Lastly, prison officials properly restricted inmates' religious services during the lockdown period because the restrictions were reasonably related to legitimate prison concerns. *See Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985).

Cook, at *1. See also Bond v. Cunningham, No. 22-1105-SHM-TMP, 2023 WL 2842887, at *5 (W.D. Tenn. Apr. 7, 2023) (finding that "the law is well-settled in the Sixth Circuit that an inmate's temporary loss of privileges [during a lockdown] does not rise to the level of constitutional magnitude") (citing, e.g., Carter v. Tucker, 69 F. App'x 678, 680 (6th Cir. 2003)).

Nor can the Court find that Plaintiff is likely to succeed on the merits of his claims related to uncontrolled prison violence attributable to understaffing and drug trafficking. It has long been evident that "drug smuggling and drug use in prison are intractable problems." Overton v. Bazzetta, 539 U.S. 126, 134 (2003). It is also clear that "[p]risons are by definition places where violent people are housed involuntarily" and that "[a]ll prisons experience incidents of crime that exceed the levels of the outside." McGhee v. Foltz, 852 F.2d 876, 880 (6th Cir. 1988) (citing Hudson v. Palmer, 468 U.S. 517, 526 (1984)). "As laudable as the plaintiff's desire to reform the state prison system is, the alleged conditions of his confinement [will not likely] justify judicial intervention into the internal workings of state prison oversight, staffing, and administration." Kirk v. Parker, No. 3:20-CV-00540, 2020 WL 5039441, at *5 (M.D. Tenn. Aug. 26, 2020) (citing Rhodes v. Chapman, 452 U.S. 337, 349–52 (1981) (finding that, in discharging duty to protect

constitutional rights, courts "cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution," nor can they award relief based on considerations that, though they may "reflect an aspiration toward an ideal environment for long-term confinement," "properly are weighed by the legislature and prison administration rather than a court")).

Finally, although the TRO Motion mentions the Tennessee Board of Parole's practice of failing to hold timely hearings, there is no corresponding remedy for that practice in Plaintiff's proposed injunctive order. Nor is a claim based on parole determinations properly joined in this action that otherwise challenges prison conditions, as discussed below. Accordingly, Plaintiff has not carried his burden of demonstrating a substantial likelihood of success on the merits of his claims.

Because irreparable injury and likelihood of success on the merits have not been established, the Court need not review the remaining factors, other than to say that for this Court to disallow unit-wide lockdowns in response to security threats would unreasonably disrupt the integrity of TCIX's administration, in which the public has an established interest. See Glover v. Johnson, 855 F.2d 277, 286–87 (6th Cir. 1988) (setting forth various public policy concerns relating to court intrusion into jail administrative matters and holding that a federal court should not "attempt to administer any portion of a state correctional system program except in the most compelling situations"). In sum, on balancing the relevant factors, the Court finds that Plaintiff has not carried his burden of demonstrating the need for emergency injunctive relief. The TRO Motion (Doc. No. 7) is therefore **DENIED**.

## IV. INSTRUCTIONS TO PLAINTIFF

Upon preliminary examination, the Complaint as currently constituted runs afoul of the Federal Rules of Civil Procedure governing the joinder of claims and parties in a single lawsuit.

Plaintiff sues one group of defendants at TCIX (Defendants James, Johnson, Cotham, and Pittman) for denying him medical care related to his oral condition and/or his need for a bland diet. (See Doc. No. 1 at 2, 4). He sues another group of defendants who appear to be Tennessee Department of Correction (TDOC) executives (Defendants Strada, Thomas, and Genovese) for recklessly "dismantl[ing] the CERT teams across TDOC state prisons," which has resulted in an increase of gang violence. (Id. at 3). He sues a combination of defendants (Defendants James, Johnson, Cotham, Thomas, Genovese, Clendindeon, and Pittman) for allowing or maintaining a variety of unconstitutional conditions at TCIX during the lockdown of Plaintiff's unit. (Id. at 6–7). Plaintiff also sues the Tennessee Board of Parole for denying him parole in December 2023, in breach of the sentencing provisions of his plea agreement and in order to continue his confinement in unconstitutional conditions. (Id. at 8–9). He sues the American Correctional Accreditation Association for giving TCIX a passing score after inspecting the facility and seeing crime-scene tape over the cell where an inmate had been murdered. (Id. at 9). Plaintiff sues Defendant Pittman for refusing his transfer requests and forcing him to live in his troublesome unit, or else "remain in [protective custody] or go to segregation," in retaliation for Plaintiff's "active suits against individuals in TCIX" and other instances when he spoke against unlawful acts. (Id. at 9–10). Lastly, the Complaint names the following defendants who are not identified with any particular claim: Hickman County Board of Commissioners, Inspector General Leslie Gilmore, TDOC Assistant Commissioner of Rehabilitative Services Rechael Riley-Coe, TDOC Director of Clinical Services Brenda Boyd, TDOC Director of Behavioral Health Jim Casey, the Tennessee

12

Department of Human and Social Services, TDOC Policy Developer and Compliance Staff, and the Hickman County Mayor and Government of Hickman County. (Id. at 1).

This scattershot style of pleading is typically rejected by courts due to misjoinder of claims and parties. See, e.g., Tolbert v. Tennessee, No. 2:17-cv-2137-STA-egb, 2017 WL 4324541, at *3 (W.D. Tenn. Sept. 28, 2017); Staples v. Stone, No. 16-cv-12367, 2017 WL 76891, at *3 (E.D. Mich. Jan. 9, 2017). The federal joinder rules permit the joinder of all claims against a single opposing party, Fed. R. Civ. P. 18(a), and they permit the joinder of all defendants alleged to be liable for "the same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2) (emphasis added). But they do not permit the conglomeration of unrelated claims against unrelated defendants in a single lawsuit. See Proctor v. Applegate, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (explaining that, under the Federal Rules, a Plaintiff must assert "at least one claim to relief against each [defendant] that arises out of the same transaction or occurrence and presents questions of law or fact common to all"); see also Tolbert, 2017 WL 4324541, at *2) (quoting Harris v. Gerth, No. 08-CV-12374, 2009 WL 368011, at *1 (E.D. Mich. Feb. 11, 2009) (collecting circuit court cases and explaining that the "impulse [] toward entertaining the broadest possible scope of action" does not "provide a plaintiff free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated")). Put simply, "[u]nrelated claims against different defendants belong in different suits." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The Complaint here, which in its present form presents unrelated claims (concerning understaffing and resulting violent conditions, lockdown procedures and related deprivations,

parole decisions, and retaliation) against different defendants, cannot be entertained without flouting the federal joinder rules and impermissibly complicating the litigation of this case.

Accordingly, Plaintiff **MUST** file an amended complaint within **30 DAYS** of the date of this Order, in which he does not join unrelated claims against unrelated parties. In other words, Plaintiff can assert any claims he has against a single defendant but no other claims, or he can assert all the claims he has against multiple defendants that arise from the same incident or series of related incidents and present at least one common question of law or fact, but no other claims. See King v. Chambers, No. 3:20-CV-00379, 2020 WL 2404672, at *3 (M.D. Tenn. May 12, 2020). If Plaintiff wishes to pursue other claims or defendants outside that limited scope of his amended complaint, he must do so by filing separate lawsuits.

The Clerk is **DIRECTED** to mail Plaintiff a blank Section 1983 complaint form, which he may use in drafting his amended complaint. Plaintiff **MUST** include the docket number for this case – No. 1:25-cv-00079 – on his amended complaint.

Plaintiff is warned that failure to comply with this Order within the time provided, or to timely request additional time to do so, may result in action by the Court, including potential dropping of parties, severing of claims, or dismissal of this action for failure to prosecute and failure to comply with the Court's order. Plaintiff is also warned that he must keep the Clerk's Office informed of his current address at all times.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE